### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| **MICHAEL DONALD ROGERS** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 14-586-CG-M** |
| | ) | |
| **CITY OF SELMA, <u>et al.</u>,** | ) | |
| **Defendants.** | ) | |

### <u>ORDER</u>

Plaintiff Michael Donald Rogers ("Plaintiff") brought suit against the City of Selma (the "City"), Police Chief William Riley ("Chief Riley"), Officer Curtis Muhannad ("Muhannad"), and Detective Ray Blanks ("Blanks") (collectively, "Defendants") under 42 U.S.C. §1983 and various state law claims.  (Doc. 1). Presently, this matter is before the Court on Defendants' Motion for Summary Judgment and supporting brief  (Docs. 21, 22), Plaintiff's response (Doc. 25), and Defendants reply (Doc. 27).  This matter is now ripe for resolution.  Based on the following, Defendants' motion is due to be **GRANTED**.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The trial court's mission is to "determine whether there is a genuine issue for trial" and not to "weigh the evidence."  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249

(1986).

The burden is on the moving party to show that there is no genuine dispute as to any material fact.  Id. at 256.  In conducting its summary judgment analysis, the Court must construe all evidence "in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

After the movant meets its burden, the burden shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If the nonmoving party fails to do so, the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  Further, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotation marks omitted).  There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. PROPER EVIDENCE TO OPPOSE SUMMARY JUDGMENT

As an initial matter, Plaintiff offers the self-described "affidavit" of Dorother Rogers, Plaintiff's wife, and Faya Toure, Plaintiff's attorney, as evidence opposing Defendants' Motion for Summary Judgment.  See (Doc. 25-9; Doc. 26).  An affidavit or declaration can be "used to support or oppose a motion" as long as either are

2

"made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matter stated." Fed. R. Civ. P. 56(c)(4).  An affidavit has three elements: "(1) a written oath embodying the fact as sworn to by the affiant; (2) the signature of the affiant; and (3) the attestation by an officer authorized to administer the oath that the affidavit was actually sworn by the affiant before the officer."  3 Am. Jur. 2d Affidavits § 8; see also Auito v. Auito, 704 S.E. 2d 789, 790 (Ga. 2011) (laying out the three elements of an affidavit).  Of particular importance is the third element.  Under Alabama law, a notary public may "[a]dminister oaths in all matters incident to the exercise" of his or her office. Ala. Code § 36-20-73 (1975).  And when an officer does not administer an oath for the affiant in relation to the statement, it is improper evidence to oppose a motion for summary judgment.  See Dudley v. City of Monroeville, Ala., 446 Fed. App'x 204, 207 (11th Cir. 2011) ("Unsworn statements do not meet the requirements of Rule 56, so the district court could not—and properly did not—rely on the content of the [unsworn] statement.") (citing Carr v. Tatangelo, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)); see also Estrella v. Ltd. Financial Services, LP, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015).[1]

In the absence of an oath affirming an affidavit, federal law recognizes certain unsworn declarations as competent evidence to oppose a motion for

[1] Also, as Defendants assert, there is authority from our sister circuit that an unsworn declaration or affidavit is not competent summary judgment evidence.  See Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1998) ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.")

summary judgment.  28 U.S.C. § 1746.  Section 1746 directs that whenever a rule requires "any matter" be supported by a "sworn declaration, … oath, or affidavit" such mater may be supported, "with like force and effect," by an unsworn declaration.  Such unsworn declaration must be "subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form:"

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).

Id.  Strict compliance with § 1746 is not required as long as the unsworn declaration "substantially" satisfies the statute.  See United States v. Roberts, 308 F.3d 1147, 1154–55 (11th Cir. 2002), cert. denied, 538 U.S. 1064 (2003) (finding § 1746 met when the unsworn declaration included the disclaimer "to the best of [the declarant's] knowledge, information or belief"); Schroeder v. McDonald, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (finding § 1746 met where it stated that "the facts stated in … the complaint [are] true and correct as known to me").

In this case, both statements include a summary of what each individual alleges occurred during the time surrounding Plaintiff's arrest.  At the close of each document, an Alabama Notary Public completed the following acknowledgement:

> On this, the 4th day of December, 2015, before me a notary public, the undersigned officer, personally appeared [Faya Toure (Doc. 25-9); Dorother Rogers (Doc. 26)], known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.  In witness hereof, I hereunto set my hand and official seal.

(Doc. 25-9; Doc. 26).  Defendants agree that a party may oppose summary judgment

4

with an affidavit or declaration.  (Doc. 27, p. 2).  But Defendants argue that neither statement is a valid affidavit or declaration.  <u>Id.</u>  Thus, Defendants argue that the Court should not consider the two self-described "affidavits."  <u>Id.</u> at 4.  The Court agrees.  Neither witness in her self-described "affidavit" declared her statement to be true, believed to be true to the best of her ability, made the statement under oath, or made it under penalty of perjury.  All the notary did was acknowledge that the person who signed the statement was actually who she proclaimed herself to be.  Thus, neither statement is proper evidence to oppose a motion for summary judgment.

But this decision is not to be interpreted as creating an insurmountable hurdle or hypertechnical formality in opposing a motion for summary judgment that serves no legitimate purpose.  The assurance provided by requiring a witness to make a statement under oath or under penalty of perjury is critical.  Without either, an affiant or declarant is free to fabricate a genuine issue of material fact with no fear of recourse.  Moreover, this decision should not be interpreted to say that a timely motion to correct such an error would be denied in every case.  But here, three months have passed since Defendants made the deficiency known and Plaintiff has neither corrected the error not requested the opportunity to correct the error.[2]  Therefore, the Court will not consider either statement in making its

---

[2] It bears mentioning that the self-described "affidavit" is not the only problem in Plaintiff's response and supporting material.  Civil Local Rule 7(e) directs that a motion in opposition to summary judgment "must not exceed thirty (30) pages." General Local Rule 5(a)(1) states that the text of the motion "must be double-spaced

decision.

## III. FACTS

The chain of events leading up to Plaintiff's arrest began when Butler Truax Jewelers of Selma, Alabama was burglarized on three different occasions during November 2013. (Doc. 22-7). In the subsequent investigation, Detective Charles Clark of the Selma Police Department obtained surveillance footage depicting the same person, later identified as Fortune Hoppins, committing one of the burglaries. Id. After his arrest, Hoppins implicated Dorother Rogers, Plaintiff's wife, as his getaway driver. Id. Hoppins's statement and surveillance footage of one of the burglaries indicated that Dorother Rogers drove her Nissan Altima during the commission of that burglary. (Doc. 22-7; Doc. 25-3, p. 9, ll. 3–4). Based on this information, police contacted Dorother Rogers and asked her to come to the station for an interview. Mrs. Rogers drove a rented Nissan Sentra to the station for the interview. Police arrested Mrs. Rogers after interviewing her. While Mrs. Rogers was at the station, officers went to her home and impounded the Nissan Altima.

---

….” And Civil Local Rule 56(b) provides that “..The non-movant's brief must include: (1) all facts relied upon, each supported by a specific, pinpoint citation to the record; (2) all challenges to the movant's asserted facts; and (3) argument supported by legal authority as appropriate.” Plaintiff's counsel, who opens her self-described “affidavit” with the qualifier that she has “been a practicing attorney in the State of Alabama for over 40 years,” submitted a twenty-one page, single-spaced brief containing a copious amount of uncited assertions of both fact and law. Furthermore, the Court finds it problematic that Plaintiff's counsel appears not only to be an advocate, but also a material witness in this case based on her self-described “affidavit.” See Putman v. Head, 268 F.3d 1223, 1246 (11th Cir. 2001) (“[R]ules of professional conduct generally disapprove of lawyers testifying at proceedings in which they are also advocates.”)

(Doc. 22-1, p. 36, ll. 3–18; Doc. 25-3, p. 16, ll. 2–4).  Plaintiff Rogers was at the house when officers impounded the Altima. (Doc. 25-3, p. 16).

Later, Plaintiff went to the police station to post his wife's bail and found out that she had been charged with burglary based on her allegedly driving the Altima during the burglaries.  (Doc. 22-1, p. 37, ll. 10–13).  After making bail, Mrs. Rogers asked the processing clerk for her property, which included the Altima key.  (Doc. 25-2, p. 10, ll. 20–23).  Unable to release the property without officer approval, the clerk called Detective Clark.  Detective Clark came to the processing desk to give Dorother back her property.  The clerk testified that she did not remember the conversation that took place between Mrs. Rogers and Clark but does remember Clark returning the Altima keys to her.  Id. at 13, ll. 14–15.  Officer Walter Curtis testified that he did not see Mrs. Rogers get the Altima keys but did know that she asked for them and got them somehow.  (Doc. 25-5, p. 20, ll. 6–16). Clark testified that he gave Mrs. Rogers the rental car key and permission to remove the rental car but not the Altima.  (Doc. 25-3, p. 35, ll. 8–18).  Either way, Plaintiff was not present for the conversation between Clark and Mrs. Rogers, neither was Officer Muhannad or Detective Blanks.  When Plaintiff and Mrs. Rogers left the police station, he drove the Altima out of the impound lot and home.  (Doc. 22-1, p. 51, ll. 21–p. 52, ll. 3).

Approximately thirteen days later, officers discovered the Altima missing. (Doc. 22-3, p. 3).  Officers began reviewing the impound lot surveillance recordings and discovered that Plaintiff removed the Altima on the same day he bailed his wife

out of jail: January 10, 2014. (Doc. 22-3, p. 3; Doc. 25-5, p. 27, ll. 16–18). At around

8:00 a.m. on the morning of January 27, 2014, five officers, including Officer

Muhannad, Detective Blanks and Detective Jones, went to Plaintiff's home. (Doc.

25-4, p. 9, ll. 20–23; Doc. 22-3, p. 3). Upon arrival, officers found the Altima on

Plaintiff's property. Officers knocked on the door, and Plaintiff answered, dressed

in his pajamas. (Doc. 22-1, p. 59, ll. 4–17). They informed him they needed to speak

with him at the station, and Plaintiff asked to change into jeans before they left. Id.

Officers escorted Plaintiff into his bedroom to change. Id. Detective Blanks then

handcuffed Plaintiff and took him to the station. Id. at 67, ll. 1–3. Upon arrival, he

was placed in an interview room where Detectives Blanks and Jones began

administering a Miranda warning. (Doc. 22-2; Doc. 25-7, p. 9, ll. 18–23). Before he

could be could be interviewed, Plaintiff's attorney arrived and instructed police to

cease the interview.

At approximately 10:20 a.m. that same morning, police arrested Plaintiff for

evidence tampering. He made bail that afternoon and was released.[3] (Doc. 22-5).

That same day, an arrest report and incident report were completed that indicates

Blanks is the reporting officer. (Doc. 22-3). Subsequently, the City dismissed the

evidence tampering charge against Plaintiff due to missing paperwork. (Doc. 22-

_____

[3] As the Court notes below, there is uncertainty in the deposition testimony
regarding the identity of the arresting officer. Further, there is dispute of whether
Plaintiff was under arrest before or after his attorney arrived at the station. The
Miranda warning report is the only evidence offered of the time at which Plaintiff
was arrested, regardless of whether it was before or after his attorney's arrival. See
(Doc. 22-5). Since Plaintiff offers no evidence to refute the time of arrest being
10:20 a.m., it is presumed undisputed.

12).  Based on his arrest, Plaintiff brought suit alleging violations of both federal and state law.

## IV. LEGAL ANALYSIS OF FEDERAL CLAIMS

Plaintiff's § 1983 federal claims contain both an individual capacity aspect (unlawful arrest and false imprisonment -- Count I, malicious prosecution -- Count VI, and excessive force -- Count VII) and an official capacity aspect (negligent training and supervision -- Count V).

### A. Section 1983 Individual Capacity Claims

Section 1983 provides a federal forum for citizens to remedy deprivations of civil liberties.  42 U.S.C. § 1983.  However, a government official who is sued in his or her individual capacity under § 1983 may seek summary judgment on the ground that he or she is entitled to qualified immunity.  Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).  Muhannad and Blanks seek the protection of qualified immunity for the individual capacity claims brought against them.  As the Supreme Court explained, qualified immunity protects government officials performing discretionary functions from civil trial and liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation

9

omitted).

To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. Once proven, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. Under Saucier v. Katz, the "threshold question" is: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's [discretionary] conduct violated a constitutional right?" 533 U.S. 194, 201 (2001). Only if the answer to that question is affirmative may the court proceed to determine "whether the right was clearly established." Id. A plaintiff can establish that a right was clearly established and provides notice or warning to officers that the conduct was unconstitutional by submitting fact-specific precedents, or demonstrating that the very conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent." Vinyard v. Wilson, 311 F.3d 1340, 1355 (11th Cir. 2002). The Court notes that the two-step inquiry established in Saucier is no longer mandatory. Pearson v. Callahan, 555 U.S. 223, 236 (2009). If no constitutional right was violated, the court need not inquire further. Id. If, however, a constitutional violation occurred, the court must then determine whether the right was clearly established. Id.

### 1. Unlawful Arrest (Count I)

As his anchor claim, Plaintiff alleges that his Fourth Amendment right against unreasonable seizure was violated because he was unlawfully arrested. It

is well established that an arrest is within the discretionary authority of a police officer. Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (finding that a trooper was "within the course and scope of his discretionary authority when he charged and arrested" someone). And it is undisputed that an "arrest without probable cause to believe a crime has been committed violates the Fourth Amendment." Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997) (citing Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)). "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." United States v. Jimenez, 780 F.2d 975, 978 (11th Cir. 1986) (internal quotations and citation omitted). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972). Instead, it is a non-technical, pragmatic approach that evaluates the facts of the case using the totality of the circumstances. Maryland v. Pringle, 540 U.S. 366, 370 (2003). "While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007).

To be shielded by qualified immunity from a claim of unlawful arrest, an officer need not have actual probable cause, but only arguable probable cause. Holmes v. Kucynda, 321 F.3d 1069, 1079 (11th Cir. 2003). Arguable probable cause

11

exists where "reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest [the] [p]laintiff." Kingsland v. City of Miami, Fla., 382 F.3d 1220, 1232 (11th Cir. 2004) (citing Von Stein, 904 F.2d at 579). "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." Von Stein, 904 F.2d at 579 (internal quotations and ellipses omitted); see also Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.") (internal quotations and citation omitted). This objective standard does not evaluate the officer's subjective intent or beliefs. Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010). Thus, "even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Holmes, 321 F.3d at 1079 (internal quotations and citation omitted). The plaintiff bears the burden to "demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances." Kingsland, 382 F.3d at 1232.

Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern. Skop, 485 F.3d at 1137–38. Like the standard for probable cause, arguable probable cause does not require an arresting officer to prove every element of a crime before making an arrest. Scarbrough v. Myles, 245 F.3d 1299, 1303 (11th Cir. 2001). Thus, the

inquiry is "whether [the defendant] violated clearly established law in making the arrests based on the objective factors that gave rise to his probable-cause determination and not whether the arrestees' actions actually constituted a crime." Id. at 1303 n. 8.

Under Alabama law, "[a] person commits the crime of tampering with physical evidence if, believing that an official proceeding is pending or may be instituted, and acting without legal right or authority, he … [d]estroys, mutilates, conceals, removes or alters physical evidence with intent to impair its use, verity or availability in the pending prospective official proceeding…." Ala. Code § 13A-10-129(a)(1) (1975).  Tampering with physical evidence is a misdemeanor.  Id.

### a. Muhannad

Plaintiff argues that Muhannad, "the real arresting officer," is liable under § 1983 for unlawful arrest.  (Doc. 25, p. 8).  Plaintiff bases this on Officer Curtis allegedly telling Muhannad before Plaintiff was arrested that he "legally removed the subject vehicle from police premises."  (Doc. 25, p. 7; Doc. 25-5, p. 26, l. 5–p. 27, l. 11).  Defendants counter that any conversation that took place between Muhannad and Officer Curtis took place the day after Plaintiff's arrest  (Doc. 22, p. 11; Doc. 25-4, p. 34, ll. 14–16),and moreover, that Muhannad "did not arrest Plaintiff [and] did not make the decision to arrest him"  (Doc. 21, p. 12) and that therefore he cannot be liable for unlawful arrest.

Reading this evidence in Plaintiff's favor, there is factual a question as to the when the conversation between Muhannad and Officer Curtis occurred.  If this was

the only question, it would be enough to survive summary judgment on the unlawful arrest claim, but it is not.  A more pivotal issue exists.  Was Muhannad the arresting officer?  Plaintiff's response is filled with assertions unsupported by fact that Muhannad is the arresting officer.  The only assertion concerning Muhannad being the arresting officer that Plaintiff supports with an evidentiary cite is the assertion that Detective Blanks testified that "Muhannad made the decision to arrest Plaintiff...." (Doc. 25, p. 8).  After examining Plaintiff's Blanks' testimony in a light most favorable to Plaintiff, the Court finds that Blanks' testimony does not support Plaintiff's proposition.  In pertinent part, the following exchange took place between Plaintiff's attorney and Blanks regarding the events leading up to Plaintiff's arrest:

> Q: (Plaintiff's Attorney): In fact, he wasn't arrested until I told you not to question him because I was his attorney; is that correct?
>
> A: (Blanks): He was not placed under arrest until Detective Clark decided to arrest him.
>
> Q: But that was after I told you not to question him.
>
> A: Yes.
>
>                                  .   .   .
>
> Q: Did you talk to Officer Clark that day?
>
> A: Yes, I did.
>
> Q: At what point did you talk to him?
>
> A: After the Miranda was read, he decided that we had probable cause to place him under arrest.
>
> Q : Did he talk to you before that decision?

A : No.

Q: Who did he talk to?

A: He was talking back and forth with Lieutenant Muhannad.

Q: Okay.  So after I arrived Clark and Muhannad had a conversation and decided to arrest him, even though there had been no questioning?

A: I guess so, ma'am.

(Doc. 25-7, p.10 l. 18 thru p.11, l. 4;  p.12, l. 18 thru p.13, l. 13).  At best, Blanks "guess" is an assumption that Muhannad had taken part in the decision to arrest, which Plaintiff's attorney invited with her leading question, and not an affirmative answer, particularly since Blanks identified Detective Clark as the one who made the decision to arrest.  Beyond this, no witness testified that Muhannad arrested Plaintiff.

Moreover, the incident report and arrest document do not reflect that Muhannad is the arresting officer.  (Doc. 22-3; Doc. 22-5).  It is the arresting officer that is listed on and completes the arrest report and complaint.  (Doc. 25-4, p. 44, ll. 3–8).  Blanks is the listed officer.[4]  Plaintiff himself testified that Officer Muhannad had no involvement in his arrest other than being at the station when he was brought in. (Doc. 22, Ex.1, P.68, ll. 1-23; p.70, l. 16 thru p.71, l. 4). Nor did Plaintiff dispute in his deposition testimony that Blanks and Jones were the arresting officers. (Id., p.71, l. 23 thru p.72, l. 5). Because the evidence does not support the

---

[4] Additionally, the incident report lists Clark as the assisting officer (Doc. 22-3), and the arrest report lists Jones as an arresting officer (Doc. 22-5).  Neither is named as defendants in this matter, so the Court does not consider their liability.

assertion that Muhannad made the arrest, the claim against him for unlawful arrest cannot survive summary judgment.  See Brown v. City of Huntsville, 608 F.3d 724, 737 (11th Cir. 2010). Defendants' motion is **GRANTED** in regard to Plaintiff's claim of unlawful arrest against Muhannad.

### b. Blanks

The complaint also names Blanks as a defendant in the § 1983 claim of unlawful arrest (Doc. 1, pp. 2–3).  But in his response to the motion for summary judgment, Plaintiff focuses on Muhannad as the arresting officer.  In doing so, Plaintiff concedes that Blanks was not the arresting officer.  (Doc. 25, p. 8) ("Other Defendants like Chief Riley and Blanks participated in the cover-up although they did not participate in the arrest.").[5]  However, deposition testimony from several police officers, although contradictory, raises the possibility that Blanks was the arresting officer.  See (Doc. 25-4, p. 64, ll. 1–4) (Muhannad testifying that Detective Clark made the arrest); (Doc. 25-7, p. 10, ll. 21–22) (Blanks testifying that Detective Clark made the arrest); (Doc. 25-3, p. 47, ll. 2–4) (Clark testifying that he did not make the arrest); (Doc. 25-6, p. 10, ll. 11–15) (Jones testifying that Blanks made the

---

[5] Throughout his response, Plaintiff alleges a "cover up" by Defendants to shield Muhannad from liability.  Beyond the contradictory depositions about who arrested Plaintiff, he offers nothing but bald speculation regarding this "cover up," which is not considered in this Order.  See Cooper v. Southern Co., 390 F.3d 695, 745 (11th Cir. 2004) (holding that summary judgment was appropriate where the plaintiff relied on conclusory assertions that were based entirely on her own subjective beliefs), overruled on other grounds Ash v. Tyson Foods, Inc., 546 U.S. 454, 457–58 (2006); Stewart v. Booker T. Washington Ins., 232 F.3d 844, 850 (11th Cir. 2000) (holding that "bare and self-serving" allegations that are not based on personal knowledge are inadequate to survive summary judgment).

16

arrest).  In addition, the arrest report list Blanks and Jones as the arresting officers.  (Doc. 22-5).  Therefore, the Court finds it necessary to evaluate whether Blanks, as the arresting officer, is due summary judgment.

In support of summary judgment, Blanks raises the defense of qualified immunity.  Assuming Blanks is the arresting officer, he acted with discretionary authority.  See Wood, 323 F.3d at 877.  Thus, the burden shifts to Plaintiff to show that qualified immunity is inappropriate.  In other words, do the facts, taken in a light most favorable to Plaintiff, show that Blanks acted without at least arguable probable cause?

Here, Plaintiff was aware that his wife was the alleged getaway driver who used the Nissan Altima in three burglaries.  (Doc. 22-1, p. 48, ll. 18–20).  He also knew that that the Altima was impounded as a result.  Id.  When the Altima was discovered missing, Blanks obtained information that helped form probable cause from officers whom viewed surveillance footage of Plaintiff removing the Altima from police impound.  See Madiwale v. Savaiko, 117 F.3d 1231, 1324 (11th Cir. 1997) (finding the collective knowledge of law enforcement officials derived from reasonably trustworthy information can establish probable cause).  Investigator Cole and Sergeant Hardy had informed Blanks that Plaintiff knew the Altima "could not be released [from impound] and was being held for processing."  (Doc. 22-3, pp. 2–3) When Blanks went to Plaintiff's home, he found the Altima.  (Doc. 22-3, p. 3)  Blanks detained Plaintiff, escorted him to the police station, and subsequently placed him under arrest.  Id.

17

Objectively considering all these facts under the totality of circumstances Plaintiff has not shown that Blanks did not have probable cause to believe that Plaintiff. Probable cause, or at least arguable probable cause, existed that Plaintiff tampered with physical evidence. Nonetheless, Plaintiff posits that because the elements of the applicable offense were not present at the time of the arrest probable cause was an impossibility. (Doc. 25, p. 6). This argument misses its mark. The evidence it takes to support a conviction is not the litmus test for probable cause. Adams v. Williams, 407 U.S. 143, 149 (1972); see also Scarbrough, 245 F.3d at 1302–03.

Additionally, Plaintiff's attempt to align his position with the unlawful arrest in Grider v. City of Auburn, Alabama, 618 F.3d 1240 (11th Cir. 2010), is unavailing. This case is materially distinguishable from Grider. In Grider, the Eleventh Circuit upheld the denial of qualified immunity on a motion for summary judgment. 618 F.3d at 1258. In his opposition, Grider unambiguously denied offering money in an alleged bribery. Id. Assuming Grider's version of events true, the court found the denial created a genuine issue of material fact of whether the officer fabricated the bribery allegation that formed the basis of arguable probable cause. Here, Plaintiff admits to taking the car and has supplied no probative evidence that Blanks knew of Officer Curtis' statement about the Altima being legally removed. In fact, Plaintiff cites evidence that Blanks was not present when the statement was made. (Doc. 25, p. 8) (citing Doc. 25-2, p. 14, ll. 14–15 (Smith testifying that she doesn't remember seeing Blanks present for Curtis' statement)). Therefore, Plaintiff had

18

not shown that a reasonable officer possessing the information Blanks possessed would not find probable cause. Based on this, Blanks is entitled to qualified immunity and Defendants' Motion for Summary Judgment on Plaintiff's unlawful arrest claim against Blanks is **GRANTED**.

### 2. False Imprisonment (Count II)

As an analogous claim under his allegation of unlawful arrest, Plaintiff contends Defendants are liable for false imprisonment in violation of the Fourth Amendment.[6] (Doc. 1, p. 2). "A false imprisonment claim under section 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law." Ortega v. Christian, 85 F.3d 1521, 1527 (11th Cir. 1996) (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)). When probable cause is lacking to make the arrest, "the arrestee has a claim under section 1983 for false imprisonment based on the detention pursuant to that arrest." Id.

As discussed above, probable cause existed to detain Plaintiff. Plaintiff failed to put forth substantial and probative evidence that disputes the claim of probable cause. Therefore, as a matter of law, Defendants are **GRANTED** summary judgment on Plaintiff's unlawful imprisonment claim.

### 3. Malicious Prosecution (Count VI)

---

[6] It is unclear whether Plaintiff brought a cause of action for false imprisonment strictly under state law or under both state and federal law. The caption of Count Two indicates state law and Plaintiff cites the applicable Alabama statute. However, he also alleges that Defendants' conduct violated § 1983 in the same count. Therefore, the Court will address the federal aspect of this claim, too. The Court addresses the state law claim for false imprisonment infra at p. 31 et seq.

Plaintiff also alleges a § 1983 claim of malicious prosecution based on his arrest and subsequent charge of evidence tampering.[7]  (Doc. 1, p. 6).  The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."  Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2010); accord Knellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008).  A viable § 1983 malicious prosecution claim requires a plaintiff to prove two things: (1) the elements of a common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures.  Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004).  The common law tort of malicious prosecution has four elements: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  Wood, 323 F.3d at 882.  Alabama's elements for malicious prosecution follow the common law elements.  Delchamps, Inc. v. Bryan, 738 So. 2d 824, 831–32 (Ala. 1999).

As established above, an arrest becomes constitutionally unreasonable if done without probable cause.  Madiwale, 117 F.3d at 1324.  Therefore, if probable cause

---

[7] In their reply, Defendants argue that Plaintiff added a state law malicious prosecution claim in his response to their motion for summary judgment and abandoned his federal malicious prosecution claim.  Although Plaintiff spells out his malicious prosecution claim in his state law section of his response, he cites Wood v. Kesler, 323 F.3d 872 (11th Cir. 2003), which dealt with a § 1983 claim of malicious prosecution.  Thus, Plaintiff's incorporation of this response in the state law section is likely in error.  The Court will evaluate the response against Defendants' §1983 malicious prosecution argument.

can be shown, a § 1983 malicious prosecution claim fails. <u>Kjellsen</u>, 517 F.3d at 1237. Also, as with a claim of unlawful arrest, an officer raising the defense of qualified immunity must only show arguable probable cause to defeat a malicious prosecution claim. <u>Grider</u>, 618 F.3d at 1257 n. 25 (applying the "same 'arguable probable cause' standard in the qualified immunity context" for a § 1983 malicious prosecution claim).

Defendants again raise the defense of qualified immunity. It has been established that probable cause, or at least arguable probable cause, existed. This is enough to bar Plaintiff's § 1983 malicious prosecution claim. But even it was not, Plaintiff's malicious prosecution claims fails for another reason. The deprivation of liberty alleged in a malicious prosecution claim must arise in conjunction with the judicial proceeding. <u>Kingsland</u>, 382 F.3d at 1235. "In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." <u>Id.</u> Therefore, an arrest is an insufficient deprivation of liberty because it occurred before the arraignment and "was not one that arose from malicious prosecution as opposed to false arrest." <u>Id.</u> The only deprivation of liberty alleged is the point of arrest. A few hours later Plaintiff made bond and was released. Plaintiff presented no evidence that he was detained after arraignment.

Therefore, as a matter of law, Defendants' are **GRANTED** summary judgment on Plaintiff's malicious prosecution claim.

### 4. Excessive Force (Count VII)

In conjunction with his claim of unlawful arrest, Plaintiff contends that the

force used against him was unconstitutionally excessive.  (Doc. 1, p. 8).  Defendants counter with a claim of qualified immunity and argue that simply being handcuffed and placed in a police car is not excessive.  (Doc. 22, p. 17).  It is agreed that the Fourth Amendment prohibits officers from using more force than is "objectively reasonable" under the circumstances.  Graham v. Connor, 490 U.S. 386, 397 (1989).  A court, in evaluating this claim, must presume that the plaintiff's version of events is true.  Saucier, 533 U.S. at 201.  The Supreme Court described the "objectively reasonable" standard to be applied in excessive force cases as a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (internal quotations omitted).

Despite this protection, the Fourth Amendment recognizes some necessary degree of physical force in an arrest.  Id.; Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003) ("This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense.")  And the proper degree of force requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  The 20/20 vision of hindsight is not the proper measure to judge reasonableness.  Instead, it is judged from the perspective of the officer on the scene and must consider the fact

that officers are often forced to make split second decisions in often uncertain and rapidly evolving situations.  Id.  "[T]o determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand" Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (internal quotations omitted).

Given that some force is necessary to complete an arrest, the Eleventh Circuit recognized that "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."  See Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).  But the issue of de minimis force is not the same in an unlawful arrest situation.  Bashir v. Rockdale County, 445 F.3d 1323, 1332 (11th Cir. 2006).  In such a case, any force is excessive.  Id. And "[u]nder this Circuit's law …, a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."  Id. at 1331.  Therefore, when there is a claim that the arrest or detention was illegal, the excessive force claim must present a "discrete constitutional violation relating to the manner in which an arrest was carried out," which "is independent of whether law enforcement had the power to arrest."  Id. at 1332.  Such a rule is based on the rationale that to allow recovery for damages based on the illegal arrest and excessive force individually "would allow [a plaintiff] to receive double the award for essentially the same claims."  Id.

Plaintiff maintains that an objective interpretation of the facts show summary judgment should be denied.  (Doc. 25, p. 11).  He avers that the force used

was excessive because "he was handcuffed and shoved into a police car," despite being accused of a misdemeanor, having no history of violence or criminal behavior, and not resisting.  Id.  Thus, "any force under these circumstances can be arguably excessive."  Id.  In support of his claim, Plaintiff relies on Tennessee v. Garner, 471 U.S. 1 (1985).  But what Plaintiff fails to consider is that a claim of "any force" applied being excessive equates to a de minimis force claim, which fails if probable cause is found.  As established supra, sufficient probable cause, or at least arguable probable cause, was present.  Thus, handcuffing and placing Plaintiff in the police car is within the constitutional boundaries.  Nolin, 207 F.3d at 1258 n. 4 (finding officer who shoved arrestee against a vehicle, placed him in handcuffs, and pushed a knee into arrestee's back used de minimis force when the arrest was lawful).  Therefore, Plaintiff's excessive force claim fails as a matter of law.

Even if the excessive force claim were viable, Plaintiff's evidence does not show objectively unreasonable force.  Although the crime Plaintiff was arrested for was a misdemeanor offense, Plaintiff and the officers knew that his wife was suspected of taking part in a spree of burglaries while using the Nissan Altima.  Recorded surveillance footage of the impound lot showed Plaintiff making away with Altima, which constituted seized evidence associated with the burglaries.  His association with evidence pertaining to the burglaries created a situation of heightened alert for officers.  (Doc. 25-6, p. 9, ll. 5–7)  It was reasonable, even if mistakenly so, for officers to believe that Plaintiff might fight back or flee, regardless of the charge being a misdemeanor or Plaintiff's lack of criminal history.

24

<u>Saucier</u>, 533 U.S. at 205.  Plaintiff even testified that officer Blanks told him he was being handcuffed for safety purposes.  (Doc. 22-1, p. 66, l. 22–p. 67, l. 3).  Given this, the present situation is the antithesis of the excessive force used by the police in <u>Garner</u>.  <u>See</u> 471 U.S. at 1 (finding officer's use of deadly force against a fleeing burglary suspect excessive where officer was "reasonably sure" suspect was unarmed and underage).

Defendants' motion for summary judgment on Plaintiff's excessive force claim is **GRANTED**.

### B. Failure to Train and Supervise (Count V) [8]

Plaintiff alleges in his complaint that the City "was deliberately indifferent in its failure to provide adequate training and supervision to" its officers.[9]  (Doc. 1, p. 6).  He contends that "[t]his deliberate indifference is part and parcel of the culture

---

[8] It is unclear whether Plaintiff pleads Count V as a state law claim, federal claim, or both.  In each of his other federal claims, he cites specifically to § 1983.  He does not in Count V.  However, he alleges deliberate indifference (constitutional terminology) on the part of the City and addresses it as a federal claim in his response to summary judgment.  Thus, for safe measure, the Court reads this count as alleging both a state and federal claim.

[9] Although Chief Riley is a named defendant, Plaintiff does not specifically name him in any one count.  In fact, under the present claim, he specifically names the City as the culprit of the alleged constitutional deprivation.  Plaintiff's response to Defendants' motion offers little, if any, clarification.  Even if Plaintiff meant to allege an individual capacity claim against Chief Riley for failure to train and supervise, summary judgment would be due in Defendants' favor.  Plaintiff failed to put forth evidence that Chief Riley was personally involved in the arrest or has an unconstitutional policy or custom causally related to the arrest.  <u>See</u> <u>West v. Tillman</u>, 496 F.3d 1321, 1328 (11th Cir. 2007).  Further, Plaintiff failed to show that Chief Riley had actual or constructive notice that his officers or their training caused the violation of individuals' constitutional rights in the past.  <u>Id.</u>  Instead, Plaintiff relies on what Chief Riley did or did not do after the arrest.  He failed to show how action or inaction after this event is a constitutional violation.

of the Selma Police Department." Id. Based on this, he brought suit against the City. Defendants counter that Plaintiff did not present evidence that the City had an unconstitutional policy or custom linked to Plaintiff's arrest. (Doc. 22, p. 8).

In order to state a claim under § 1983 against the City, Plaintiff must allege that he suffered a constitutional injury, and that his injury was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. Id. In Board of the County Commissioners of Bryan County v. Brown, the Supreme Court narrowed the Monell test when it stated:

> [I]t is not enough for a § 1983 plaintiff to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

520 U.S. 397, 404 (1997). A plaintiff's burden is heavy in a § 1983 official capacity claim. As the Eleventh Circuit articulated:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to respondeat superior liability—a result never intended by section 1983. As the Supreme Court has explained, "'[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in

de facto respondeat superior liability on municipalities ....'" Id. at 391–
92 [citing City of Canton v. Harris, 489 U.S. 378 (1989)].

Gold v. City of Miami, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998).  Under § 1983, the

"requisite degree of culpability" is that the municipality acted with at least

"deliberate indifference" to the consequences of its actions.

       If an unconstitutional policy or custom is alleged, plaintiff must identify the

policy or custom, connect the policy or custom with the government entity itself, and

show that the particular injury was incurred because of the execution of that policy.

Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984) (en banc).  If plaintiff

fails to allege an official policy or custom, then his claim against the municipality is

subject to dismissal.  See Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d

521, 535–33 (5th Cir. 1996).  Moreover, the Eleventh Circuit has held that without

notice of a need to train or supervise in a particular area, a municipality is not

liable as a matter of law for any failure to train or supervise.  Church v. City of

Huntsville, 30 F.3d 1332, 1342–46 (11th Cir. 1994) (holding that the plaintiffs were

not likely to succeed on the merits of their failure-to-train claim without proof that

the City was aware of a prior incident in which constitutional rights were similarly

violated); see also Popham v. City of Talladega, 908 F.2d 1561, 1564–65 (11th Cir.

1990) (finding no liability for failure to train when no pattern of incidents put the

City on notice of a need to train).

       Here, Plaintiff builds his deliberate indifference allegation on what he

classifies as an obvious inadequacy in training based upon officers being unable to

discuss department policies during depositions, inability to identify the arresting

27

officer, and the arrest report "not provid[ing] any specifics." (Doc. 25, 12). Plaintiff, however, fails to show that the City was the moving force behind these actions or draw a causal connection to Plaintiff's alleged harm. And as Defendants point out, just because an officer cannot give a perfect answer during a deposition regarding a policy or the law does not mean a municipality is liable for a failure to train. (Doc. 27, p. 7) (citing Wynn v. City of Lakeland, 727 F. Supp. 2d 1309, 1316–17 (M.D. Fla. 2010) (reasoning in analysis that an officer's inability to correctly answer a question during deposition at most reflects that the officer "did not learn his training perfectly, not that the city failed to train properly")).

Moreover, Plaintiff's claim against the City fails because he provided no evidence that the City had prior notice that its training was constitutionally lacking. Instead, Plaintiff relies on what he alleges the City did after the fact -- failed to "talk with officers or investigate" the situation. (Doc. 25, p. 12). Without a showing of prior notice to accompany it, this allegation is insufficient to carry Plaintiff's official capacity claim as a matter of law. See Skop, 485 F.3d at 1145 (affirming a district court's dismissal of a failure to train claim where no evidence of prior notice was provided). Thus, the City is **GRANTED** summary judgment on Plaintiff's federal claim of inadequate training and supervision.

In addition to the city, Plaintiff sued each individual officer in his official capacity. Official capacity lawsuits, in contrast to individual capacity actions, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 465 (1985)

(quoting <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658, 690 n.55 (1978). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991). Accordingly, the claims against Chief Riley, Muhannad, and Blanks in their official capacities are identical to, and duplicative of the charges against the City. Therefore, Chief Riley, Muhannad, and Blanks are **GRANTED** summary judgment on the official capacity claims. <u>See</u> <u>Hardy v. Town of Hayneville</u>, 50 F. Supp. 2d 1176, 1185 (M.D. Ala. 1999) (dismissing § 1983 claims against city officials in their official capacity as duplicative under <u>Graham</u>).

## V. LEGAL ANALYSIS OF STATE LAW CLAIMS

In addition to his federal claims, Plaintiff alleges six state law claims. (Doc. 1). The claims of false imprisonment (Count II), negligence (Count III), assault and battery (Count VIII), invasion of privacy (Count IX), and wantonness (Count X) are brought against the officers in their individual capacities. Negligent hiring (Count IV) and negligent training and supervision (Count V) are brought against the City.

### A. Individual Capacity Claims

In response to each individual capacity claim, Defendants contend summary judgment is due both as a matter of law and under Alabama's statutory immunity afforded police officers. Before discussing each individual claim, it is necessary to outline the boundaries of the immunity in question.

In 1994, the Alabama Legislature enacted law providing immunity for municipal police officers exercising discretionary authority in certain

circumstances.[10]  Ala. Code § 6-5-338(a) (1975).  Section 6-5-338(a) provides:

> Every peace officer … who is employed or appointed pursuant to the
> Constitution or statutes of this state, whether appointed or employed
> as such peace officer by the state or a county or municipality thereof …
> shall at all times be deemed to be officers of this state, and as such
> shall have immunity from tort liability arising out of his or her conduct
> in performance of any discretionary function within the line and scope
> of his or her law enforcement duties.

Later on, the Alabama Supreme Court explained that "'[t]he restatement of

State-agent immunity as set out by this court in Ex parte Cranman, [792 So. 2d 392

(Ala. 2000)], governs the determination of whether a peace officer is entitled to

immunity under § 6-5-338(a).'"  Ex parte City of Midfield, 161 So. 3d 1158, 1163

(Ala. 2014) (quoting Ex parte City of Tuskegee, 932 So. 2d 895, 904 (Ala. 2005))

(alteration in original).  Cranman outlined the test for State-agent immunity, in

pertinent part, as follows:

> A State agent shall be immune from civil liability in his or her
> personal capacity when the conduct made the basis of the claim
> against the agent is based upon the agent
>
> ***
> (2) exercising his or her judgment in the administration of a
> department or agency, including, but not limited to, examples such as:
>
> ***
>    (d) hiring, firing, transferring, assigning, or supervising personnel; or
>
> ***
> (4) exercising judgment in the enforcement of the criminal laws of the
> State, including, but not limited to, law-enforcement officers' arresting

---

[10] Although case law and the statute use the term peace officer, this term is
interchangeable or analogous to police officer.  See Ex parte Brown, 182 So. 3d 495
(Ala. 2015) (applying the statutory term "peace officer" to a "police officer" of the
Fultondale Police Department).

or attempting to arrest persons….

792 So. 2d at 405.  However, a police officer's immunity is not without its limits.

Section 6-5-388(a) has two exceptions:

   (1) When the Constitution or law of the United States, or the Constitution
   of this State, or law, rules, or regulations of this State enacted or
   promulgated for the purposes of regulating the activities of a
   government agency require otherwise; or

   (2) When the State agent acts willfully, maliciously, fraudulently, in bad
   faith, beyond his or her authority, or under a mistaken interpretation
   of the law.

Id.  Later, the court addressed the fact that the immunity initially set for in § 6-5-

338(a) was broader than that enunciated in Cranman.  Hollis v. City of Brighton,

950 So. 2d 300, 309 (Ala. 2006).  To reconcile this difference, immunity extends to

all "circumstances entitling such officers to" the immunity originally anticipated in

§ 6-5-338(a).  Id. at 309.  Much like the federal analysis of qualified immunity, the

police officer bears the original burden of proving that a "plaintiff's claims arise

from a function that would entitle the [police officer] to immunity," a discretionary

action.  Ex parte City of Montgomery, 99 So. 3d 282, 293 (Ala. 2012).  Once this

initial burden is met, the burden shifts to the plaintiff to show that an exception

applies.  Ex parte Kennedy, 992 So. 2d 1276, 1283 (Ala. 2008).

   **1. False Imprisonment (Count II)**

   In conjunction with his federal unlawful arrest claim, Plaintiff brought suit

for false imprisonment under Alabama law, which "consists of the unlawful

detention of the person of another for any length of time whereby he is deprived of

his personal liberty."  Ala. Code § 6-5-170 (2001).  An unlawful arrest will support a

claim for false imprisonment.  <u>Upshaw v. McArdle</u>, 650 So. 2d 875, 878 (Ala. 1994).

Defendants argue that the existence of probable cause for Plaintiff's federal claim shows that, as a matter of law, summary judgment should be granted.  (Doc. 22, p. 19).  In Alabama, "probable cause must exist to make a lawful arrest." <u>Franklin v. City of Huntsville</u>, 670 So. 2d 848, 852 (Ala. 1995).  Alabama's standard for the existence of probable cause is the same as the federal standard.  <u>See</u> <u>Nesmith v. Alford</u>, 318 F.2d 110, 122 (5th Cir. 1963) ("The Alabama standard of probable cause in actions for malicious prosecution appears to be the traditional one.")[11]; <u>see also</u> <u>Walker v. Briley</u>, 140 F. Supp. 2d 1249, 1262 (N.D. Ala. 2001) (applying the federal probable cause standard in a state law claim of false imprisonment).

Plaintiff relies on his federal unlawful arrest argument to survive summary judgment for this state law claim.  (Doc. 25, p. 15).  Because the Court has already established that probable cause was present, his state law false imprisonment claim fails as a matter of law.

Additionally, Blanks and Muhannad are due immunity under § 6-5-338(a). The actions leading up to and including an arrest are actions spelled out in <u>Cranman</u>.  792 So. 2d at 405.  Thus, it was Plaintiff's burden to show the willful, malicious, or bad faith actions of Blanks or Muhannad.  Plaintiff fails to put forth any evidence towards this burden.  Instead, he relies on being handcuffed and

---

[11] Fifth Circuit cases decided before October 1, 1981 are binding precedent in the Eleventh Circuit.  <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

detained until he made bond.  (Doc. 25, p. 15).  This is not enough.  Thus, Defendants' Motion for Summary Judgment on the state law claim of false imprisonment is **GRANTED**.

### 2. Negligence and Wantonness Claim (Count III & Count X)

In Counts Three and Ten, Plaintiff alleges negligence and wantonness, respectively, on the part of Muhannad and Blanks.  (Doc. 1, pp. 5, 10).  "This Court has previously held that poor judgment or wanton misconduct, an aggravated form of negligence, does not rise to the level of willfulness and maliciousness necessary to put the State agent beyond the immunity recognized in Cranman."  Ex parte Randall, 971 So. 2d 652, 664 (Ala. 2007); see also Adams v. City of Mobile, 2008 WL 4531768, at * 10–11 (S. D. Ala. Oct. 9, 2008) (applying this principle).  Because a police officer is immunized from liability for his negligent conduct, count Three must be dismissed.  Likewise, Count Ten must be dismissed to the extent it purports to rest on the alleged wantonness of the officers.  Adams, 2008 WL 4531768, at *10-11.  Therefore, Defendants are **GRANTED** summary judgment on Counts Three and Ten.

### 3. Assault and Battery (Claim VIII)

In Count Eight, Plaintiff alleges a state law claim of assault and battery based on being handcuffed and placed in the police car.  (Doc. 1, p. 9).  In Alabama, the elements of assault and battery are:

> [A]n intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well founded fear of an imminent battery, coupled with the apparent present ability to

> effectuate the attempt if not prevented…. A successful assault
> becomes a battery, which consists of touching another in a hostile
> manner.

Wright v. Wright, 654 So. 2d 542, 544 (Ala. 1995). The Alabama Supreme Court,

however, has stated, "In making the arrest, a police officer may use reasonable force

and may be held liable only if more force is used than is necessary to effectuate the

arrest." Franklin 670 So. 2d at 852 (citing Ala. Code § 13A-3-27(a) ("A peace officer

is justified in using that degree of physical force which he reasonably believe to be

necessary, upon a person in order: (1) To make an arrest for a misdemeanor,

violation or violation of a criminal ordinance … unless the peace officer knows that

arrest is unauthorized.")) The evaluation of whether an assault and battery took

place in regards to an arrest mirrors whether excessive force was used in a federal

claim. See Walker v. City of Huntsville, 62 So. 3d 474, 494 (Ala. 2010); see also

Johnson v. Ashworth, 2014 WL 1331019, at *12 (S.D. Ala. Mar. 27, 2014) (applying

the federal excessive force standard in an assault and battery claim).

Plaintiff insists that the Blanks handcuffing and pushing him in the police

car was done in rudeness, anger, and/or in a hostile manner. (Doc. 1, p. 9; Doc. 25,

p. 15). Plaintiff only offers his conclusory statements of officers' attitude and failed

to provide evidence of an actual "hostile manner." Harper v. Winston County, 892

So. 2d 346, 354 (Ala. 2004). As established supra, it was reasonable for officers to

handcuff Plaintiff before taking him to the station given the heightened alert

brought on by the burglaries. The video evidence showing Plaintiff removing the

car added to this alert. Moreover, Plaintiff produced no evidence supporting the

proposition that officers "acted with the intent to injure or with ill will towards" him in their actions leading up to and including his arrest, which is necessary to prove the willfulness, maliciousness, or bad faith exception to § 6-5-338(a) immunity. Rachel v. City of Mobile, Ala., 112 F. sup. 3d 1263, 1296 (S.D. Ala. 2015) aff'd sub nom. Rachel v. McCann, 2016 WL 424684 (11th Cir. Feb. 4, 2016). Thus, summary judge is **GRANTED** for Defendants on Plaintiff's assault and battery claim.

### 4. Invasion of Privacy (Count IX)

In Count Nine, Plaintiff contends that Muhannad and Blanks intruded upon his solitude and seclusion when they entered his home on January 27, 2014. (Doc. 1, p. 10). He bases this allegation on what he classifies as officers pursuing an unfounded investigation, five police vehicles coming to his home, and entering his home without a warrant or probable cause while he was "undressed." (Doc. 25, p. 16).

Under Alabama law, a plaintiff has a viable claim for invasion of privacy in four distinct situations: "(1) the intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and (4) the appropriation of some element of the plaintiff's personality for commercial use." I.C.U. v. Investigations, Inc. v. Jones, 780 So. 2d 685, 689 (Ala. 2000). In this case, Plaintiff alleges an intrusion of the first nature. When the alleged intrusion deals with an investigation, the reviewing court must "determine the purpose for the investigation and 'whether the thing into which there is intrusion or prying is,

and is entitled to be, private.'" Id. (quoting Hogin v. Cottingham, 553 So. 2d 525, 528 (Ala. 1988)).  Additionally, the investigation "must not be pursued in an offensive or improper manner."  Johnson v. Corporate Special Services, Inc., 602 So. 2d 385, 387–88 (Ala. 1992).  In other words, was the investigation done in such a manner "so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities"?  Jones, 780 So. 2d at 689 (internal quotations omitted).

Defendants contend that summary judgment is due based on the protections of § 6-5-338(a).  Further, Defendants argue that the facts show the investigation and subsequent entry into Plaintiff's home is in accordance with the law above. (Doc. 22, p. 21).  A police officer's investigation is a "discretionary function within the line and scope of … law enforcement duties" for the purpose of § 6-5-338(a). Grider, 618 F.3d at 1268; see also Ex parte Butts, 775 So. 2d 173, 178 (Ala. 2000). Therefore, Plaintiff bears the burden to show malice, willfulness, actions beyond authority, bad faith, or actions taken under a mistaken interpretation of law to remove immunity.  Plaintiff puts forward no evidence showing Blanks or Muhannad "had a personal ill will against [Plaintiff] and that they either maliciously or in bad faith [entered his home] solely for purpose of harassment."  Couch v. City of Sheffield, 708 So. 2d 144, 153–54 (Ala. 1998) overruled on other grounds Ex parte City of Tuskegee, 932 So. 2d 895, 904 (Ala. 2005).  Thus, § 6-5-338(a) immunity applies to this count.

36

Even if immunity is improper, the facts are not present to reach the required standard when read in a light most favorable to Plaintiff. It has already been established that the car, which had been seized as evidence, was missing and surveillance footage established that Plaintiff removed it. Thus, the purpose of the investigation was legitimate. How officers chose to investigate Plaintiff's culpability fell within their discretion. <u>Key v. City of Cullman</u>, 826 So. 2d 151, 158 (Ala. Crim. App. 2001). It was reasonable to take more than one officer to Plaintiff's house to investigate the removal of evidence connected with a spree of burglaries.

With that said, the Court does recognize that what a person wears behind closed doors is protected from prying eyes based on the law above. But when Plaintiff decided to answer the door in like manner, he presented it for those who come to call. <u>See</u> <u>Jones</u>, 780 So. 2d at 689 (finding an investigator's filming of Jones urinating from his front porch that was open to a passerby is not a wrongful invasion of privacy). Furthermore, by his own account, Plaintiff is the one that allowed officers into his home when he asked to change clothes. (Doc. 22-1, p. 59, ll. 2–17). For safety purposes, the officers had a right to escort Plaintiff into the house. <u>Washington v. Chrisman</u>, 455 U.S. 1, 5 (1982) (reasoning that an officer has a right to remain at an arrestee's elbow because every arrest is presumed to present a risk of danger). If a police escort after making a request to change clothes is an invasion of privacy under state law, Plaintiff failed to put before this Court the relevant authority. Therefore, Defendants' Motion for Summary Judgment of Count Nine, the invasion of privacy claim, is **GRANTED**.

**B. Negligent Hiring, Training, and Supervision (Count IV & V)**

In Counts Four and Five, Plaintiff alleges that the City is liable for negligently hiring unqualified officers (Doc. 1, p. 5) and negligently training and supervising its officers in light of the serious consequences that could result from its negligence (Doc. 1, p. 6).  Defendants argue that, although there may be a question of whether a cause of action against the City is available, it nonetheless fails in this case because of the City's immunity.  (Doc. 22, p. 22).

Historically, "no Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate."  Borton v. City of Dothan, 734 F. Supp. 2d 1237, 1258–59 (M.D. Ala. 2010); Hamilton v. City of Jackson, 508 F. Supp. 2d 1045, 1057–58 (S.D. Ala. 2007); Ott v. City of Mobile, 169 F. Supp. 2d 1301, 1314–15 (S.D. Ala. 2001). The parties point out, however, that the Alabama Supreme Court recently called the foundation of this principle into question.  Ex parte City of Montgomery, 99 So. 3d 282, 289 (Ala. 2012); see also Howard v. City of Demopolis, Ala., 984 F. Supp. 2d 1245, 1260 (S.D. Ala. 2013) (evaluating Montgomery in the context of a negligent hiring, training, and supervision claim against a municipality).  In Montgomery, the court rejected a municipality's claim of immunity because of its "fail[ure] to identify the individual or individuals specifically charged with the hiring, training, and supervision of the police officers, much less whether the individual or individuals are police officers entitled to State-agent immunity."  Id. at 299; see also Ex parte City of Midfield, 161 So. 3d 1158, 1169 (Ala. 2014) (reaffirming the principle that it

is necessary for the municipality to identify whether the hiring, training, or supervising person is a police officer in deciding whether a municipality is immune). The need to identify the hiring training and supervising individual is based on the well-established principle that, "if a municipal peace officer is immune pursuant to § 6-5-338(a), then pursuant to § 6-5-338(b), the city by which he is employed is also immune." <u>Montgomery</u>, 99 So. 3d 282 at 298.

In deciding the present motion, the undersigned need not evaluate whether, generally speaking, a cognizable claim lies against a municipality if the hiring, supervising, and training employee is not a police officer. Defendants assert that Chief Riley is the person in charge of hiring, training, and supervising Selma's police officers. (Doc. 22, p. 23; Doc. 27, p. 14). Plaintiff does not contest this point, and indeed identifies the nexus of this claim as a failure of the "leadership of Chief Riley." (Doc. 25, pp. 18–19). Hiring, training, and supervising a subordinate officer are specifically spelled out as actions protected by immunity. <u>Cranman</u>, 792 So. 2d at 405. Thus, Plaintiff needs to show malice, willfulness, fraudulent behavior, bad faith, or actions beyond Chief Riley's authority. Moreover, if a cognizable claim lies, Plaintiff must put forth "affirmative proof" that, assuming the officers were incompetent, Chief Riley or the City had actual or constructive notice of such. <u>Howard</u>, 984 F. Supp. 2d at 1260. Plaintiff failed to provide evidence of either requirement. Thus, Plaintiff's final claim fails as a matter of law, and Defendants are **GRANTED** summary judgment on Counts IV and V.

## VI. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 21) is **GRANTED**.

**DONE** and **ORDERED** this 8th day of April, 2016.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE